Steven B. Derounian, J.
The facts in these proceedings are as follows: On or about November 15,1967 Charles E. Friedgood delivered 13 promissory notes made by one Jacob Halperin and indorsed by Charles E. Friedgood (said notes having a face *1023 value of $90,000) to Robert Frankel, the president of Frankel’s Huntington, Inc., for which Charles E. Friedgood received the sum of $80,100. Simultaneous with this transfer of notes and payment of $80,100, there was an assignment made and delivered to Frankel of 100% of the stock of Smallwood Estates, Inc., a corporation wholly owned by Charles E. Friedgood and Jacob Halperin, which stock was deposited in escrow with Frankel’s attorney, as security for the payment of the series of 13 promissory notes; together with an agreement between Charles E. Friedgood and Jacob Halperin, dated November 14, 1967, in the nature of an estoppel. Frankel thereafter delivered the notes and the agreement between Friedgood and Halperin, confirming the assignment of said notes, and the security agreement with respect to Smallwood Estates, Inc. stock, and assigned his rights to Frankel’s Huntington, Inc. (hereinafter referred to as u Frankel’s”). The agreement containing the stock assignment provided that, pending payment of the notes, and in event of a default, the holder, after seven days ’ written notice of the default, had the right to “ sell, assign and deliver the whole or any part of the stock, at public or private sale, at the option of such holder, in order to satisfy any of the obligations represented by the unpaid promissory notes, which sale, assignment or delivery, may be made without demand for payment, advertising or notice of the time and place of sale, and on any such sale Frankel, or his assigns, may purchase all or any part of said stock. In the event that the proceeds of such sale are insufficient to satisfy the obligations represented by the unpaid promissory notes and the expenses of the sale, the maker and guarantor of the unpaid promissory notes shall remain liable for the deficiency.” The notes turned over to Frankel were made by Jacob Halperin to the order of ¡Charles E. Friedgood, in lieu of balance of an unpaid note due to Charles E. Friedgood from Jacob Halperin in connection with a stock purchase agreement made April 17, 1967.
There was a default in the second payment of the series of these notes, and on or about February 16, 1968 an action was commenced by Frankel’s Huntington, Inc. against Halperin and Friedgood to recover the unpaid balance of $81,000 plus interest due on the notes (note No. 1 had been paid by the maker thereof). A companion action was commenced by the said plaintiff Frankel’s against Smallwood Estates, Inc., Halperin, and Friedgood, to restrain the transfer of the ¡Smallwood assets. Subsequent to the commencement of this action, and on or about December 4, 1968, a stipulation of settlement was entered into between Frankel’s and Halperin and Friedgood (Index Nos. *1024 2350/68 and 10745/68) providing that in the event of defendants’ default under the said stipulation (which provided for the installment payment of $73,350, including attorney’s fees of $2,250), judgments could then be entered by the plaintiff for the full amount sued upon, giving credit upon execution for any money paid under the stipulation; and the said stipulation included the terms of the original assignment agreement providing for a sale, public or private, by plaintiff, of the stock of Smallwood Estates, Inc. which after assignment to the plaintiff Frankel remained physically held by the plaintiff’s attorneys, Wydler, Balin, Pares & Soloway, Esqs., as escrowee. As a result of default by defendants under this stipulation of settlement, on or about March 25, 1969 judgments were entered in the office of the Clerk of the County of Nassau in both actions.
During the spring of 1968, and subsequent to the assignment in the transaction between Frankel and Friedgood, judgments were obtained by petitioners against Halperin and Friedgood.
Bestraining notices were served upon respondents (escrowee) by American Bank and Trust Company and Leumi Financial Corporation, petitioners, on or about October 15, 1968 and by Philip Amin on or about January 10, 1969:
The petitioners then brought on the first and second proceedings herein, in which petitioners, judgment creditors, each seek an order pursuant to CPLB 5225 directing the respondent, Wydler, Balin, Pares & iSoloway, Esqs., as escrowee, to turn over and deliver to the Sheriff of Nassau County all shares of the capital stock of Smallwood Estates, Inc., which they allege to be owned by judgment debtors Jacob Halperin and/or Charles E. Friedgood, and held by the respondents, pursuant to the loan agreement consummated between Charles E. Friedgood and Frankel’s Huntington, Inc. dated November 15, 1967. Petitioners contend that regardless of any question of priority, the stock should be sold by the Sheriff at public sale, the proceeds to be used by petitioners, judgment creditors, and the balance to be given to respondents’ principal or to be distributed as the court may direct.
Kulak & Lerner, Esqs., appear as interveners in the proceeding of American Bank & Trust Company v. Wydler, Balin, Pares & Soloway (IndexNo. 1911/69), pursuant to order of Mr. Justice William J. Sullivan dated March 17,1969.
The intervenor claims priority over petitioners but not over respondents. The intervenor is a law firm which alleges a balance due to it from the judgment debtors for various legal services rendered to the judgment debtors personally and/or to the .Smallwood corporation in the amount of $27,500. The intervenor *1025 alleges that on or about July 3,1968 the judgment debtors, individually and on behalf of Smallwood Estates, Inc., entered into an agreement with them whereby the stock of Smallwood Estates, Inc. would be turned over to them (after Prankel had been paid) as "security for the payment of their bill of $27,500.
In the third proceeding, the petitioner, the judgment creditor, Frankel’s Huntington, Inc., seeks an order, pursuant to CPLR 5240, (1) to Vacate and set aside two restnaining notices, each dated October 15, 1968, issued pursuant to the two judgments obtained by American Bank and Trust Company against Charles E. Friedgood, and Leumi Financial Corporation against Jacob Halperin, et al., served on Wydler, Balin, Pares & Soloway, Esqs., as escrowee; (2) to set aside and vacate, as against the same escrowee, a third-party execution of judgment issued January 10, 1969 by a judgment creditor, Philip Amin, and (3) to direct and permit the same escrowee to release and deliver the escrowed stock of iSmallwood Estates, Inc. to their principal, the judgment creditor, Frankel’s Huntington, Inc.
There is a cross motion made to the third proceeding, in which the American Bank & Trust Company and Leumi Financial Corporation each seek to vacate and set aside an “ex parte ” order and the judgment entered thereon, of Justice Paul J. Widlitz, Supreme Court, Nassau County, dated March 26, 1969, which decreed “ that the plaintiff Frankel’s Huntington, Inc. may sell, assign or transfer at public auction or private sale the stock of defendant Smallwood Estates, Inc., after seven (7) days written notice thereof to the defendants, and apply the proceeds towards the payment of the judgment entered in the Office of the Clerk of Nassau County on March 25, 1969 in an action entitled ‘ Frankel’s Huntington Inc. against Jacob Halperin and Charles E. Friedgood,’ and that any excess, if any, after satisfaction of said judgment, shall be paid to the defendants ”, because they allege that this order fails to comply with section 9-504 of the Uniform Commercial Code with respect to the manner of conducting the sale; or, in the alternative, to amend said order and judgment so as to provide that the sale of the Smallwood stock be conducted in a reasonable manner with extensive advertising.
All of these proceedings have been referred to Special Term Part III for trial, the Justice in Special Term Part I having held that upon the papers submitted the question of priorities and the rights of the respective claimants could not be determined.
A trial was held in this court on May 13, 1969. Petitioners called three witnesses to make their case: Harry Seaton, Esq., *1026 a member of the firm of Wydler, Balin, Pares & 'Soloway, Esqs., the escrowee; Robert Frankel, the judgment creditor; and Martin Lerner, Esq., a member of the law firm which has intervened in this proceeding.
The questions to be resolved in the first and second proceedings are:
1. Is there a fund to which the judgment debtor is entitled?
2. Are the rights of the petitioners superior to that of the transferee, in this case, Frankel’s Huntington, Inc.?
3. Are the petitioners, as the holders of judgments recovered subsequent to the -alleged usurious transaction, to be regarded as in privity with the borrower so as to permit a collateral attack on the underlying transaction as a result of which there was an assignment of the ¡Smallwood stock?
Proceedings, -such as the first two proceedings brought herein pursuant to CPLR 5225, are intended to reach property not in possession of the judgment debtor.
Section 5225 (subd. [b]) -of the CPLR provides that a special proceeding may be “ commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor’s rights to the property are superior to those of the transferee ” (emphasis supplied).
Petitioners move against respondents as persons in possession or custody of the judgment debtors’ personal property- — in this case, the -Smallwood Estates, Inc. stock certificates. To succeed in such a proceeding, the petitioners must first prove that the judgment debtors have an interest in the property sought to be reached (in this case the stock certificates) and that the interest of the judgment creditor, and/or his escrowee, is purely a possessory -or -custodial interest. The effective assignment -of November 15, 1967 and the subsequent default by the judgment debtors have extinguished the interest of the judgment debtors.
In an attempt to supply this prerequisite of interest, set forth in CPLR 5225 (subd. [b]), and to vitiate the assignment made by the judgment debtors, petitioners seek to void the original transaction between Frankel and Friedgood and so create a fund to move against. The petitioners, in their attack on the underlying transaction pursuant to which the stock securities were originally pledged and came into the physical custody of the respondent escrowee, allege that Dr. Friedgood did not sell the Halperin notes to Frankel, but, in fact, that Frankel made a *1027 usurious loan to Friedgood, as a result of which assets of the judgment debtors, alleged to be greatly in excess of the face value of the notes, were assigned and placed beyond the reach of the petitioners as creditors.
Petitioners rely on their status as judgment creditors to establish the requisite privity to entitle them to question the transaction between Dr. Friedgood and Frankel and to label it as usurious and fraudulent. Petitioners base the allegation of usury on the fact that Frankel turned over $80,100 to the judgment debtor, Friedgood, in exchange for notes in the amount of $90,000; and, in addition, rely on the fact that Frankel received what petitioners label as “ excessive ” security, consisting of an assignment of the Smallwood Estates, Inc. stock on which petitioners place a net value of $1,500,000.
The judgment debtors, Halperin and Friedgood, represented by counsel, entered into a stipulation of settlement with Frankel dated December 4, 1968 and did not at that time, nor have they since, raised the defense of usury. Moreover, counsel for the judgment debtors concedes that the assignment such counsel holds to guarantee payment of legal services is an assignment subordinate to the assignment held by the judgment creditor Frankel’s.
“Where a debtor has waived his right to plead usury, or has acquiesced therein, a judgment creditor is without right to attack an older lien for usury.” (Barrett v. Conley, 35 Misc 2d 47, 49.)
“ Holder of judgment recovered subsequent to alleged usurious transaction could not be regarded as in privity with borrower so as to attack, in proceedings involving right to surplus resulting from foreclosure sale of mortgaged property, the validity of such prior transaction. West Side Federal Sav. & Loan Ass'n of New York City v. Rosen, 1951, 202 Misc. 442. [118 N. Y. S. 2d 311] ” — McKinney’s Cons. Laws of N. Y., General Obligations Law, § 5-511, note 109.
The court finds that the petitioners may not now, at this stage of the proceedings, after the judgment debtors have conceded the obligation by written stipulation of settlement, and after the judgment creditor Frankel’s has obtained an order from the Supreme Court, Nassau County, Widlitz, J., dated March 27, 1969 which decreed that Frankel’s of Huntington, Inc. may .sell, assign or transfer the securities, take advantage of a defense that the debtors themselves waived.
The courts have held that the defense of usury is “ personal to the borrower ’ ’ or one in privity with the borrower. The same question determinative of the issues in this proceeding was decided in West Side Fed. Sav. & Loan Assn. v. Rosen *1028 (202 Misc. 442), Supreme Court, Nassau County, where the court, in affirming the Referee’s report, held the holder of a judgment recovered subsequent to the alleged usurious transaction is not regarded as being in privity with the borrower so as to be entitled to avail itself of the plea of usury and the law in New York requires that holding.
Arguendo that the court would accept such a belated defense as is raised by petitioners, and conceding, for the purpose of argument only, that the petitioners have established a sufficient interest to raise the defenses of usury and fraud, the court finds, in any event, that the petitioners have not sustained their burden of proof* by the required preponderance of believable, persuasive proof, so as to establish that the underlying transaction was in fact a usurious loan arranged to defraud creditors, rather than the bona fide sale it is asserted to be by the judgment creditor Frankel’s and the judgment debtor Friedgood.
The petitioners have not proven the allegations set forth in their pleadings, including any one of the five essential elements necessary to be proven to sustain a claim of fraud. If allegations alone were deemed to be determinative of litigation, these petitioners and, in fact, all plaintiffs would be victorious. The petitioners in this case have made broad sweeping allegations in an attempt to reach certain assets which, parenthetically, if we rely on their (unproven) evaluation, are more than sufficient to meet the obligation of Frankel, after which petitioners would be free to move to reach the surplus that their allegations indicate will remain abundantly after payment to Frankel.
The petitioners seeking equity must first offer to do equity. Petitioners are not entitled to relief without a tender of payment to Frankel’s Huntington, Inc. of the amount due under the Frankel’s Huntington, Inc. judgments.
Petitioners endeavored to make their case through the mouth of the escrowee, the judgment creditor Frankel, and counsel for the judgment debtors. Petitioners did not, for reasons known only to themselves, call to the stand either Friedgood or Halperin or the individual referred to as a broker, named Goldsmith. Petitioners allege a violation of the usury law, but have not developed a factual situation, during their day in court, which will support such allegation. The unfortunate absence of the borrower from this equity proceeding leaves further uncertainty as to the validity of the usury contention.
*1029 After an evaluation of the testimony adduced during the trial on May 13, the court is constrained, absent evidence to the contrary, to find that the subject notes had a valid inception in the underlying transaction between Frankel and Friedgood, and was in fact a sale (a sale being the transfer of general or absolute interest in property for a price in money) of those notes originally given by Halperin to Friedgood in payment of an obligation owed by Halperin to Friedgood arising out of a stock purchase dating back to 1967. The notes were discounted by Frankel as notes customarily are when traded off prior to maturity. The fact that the notes were backed up by indorsement and security in the form of an assignment of stock is significant only of the fact that Frankel was acting as a prudent businessman when he sought and obtained all the protection he could exact in return for turning over a substantial sum of money.
The court finds the judgment debtors effectively transferred and assigned the capital stock of Smallwood Estates, Inc. to Frankel on November 15, 1967, pursuant to the agreement of that date. This was prior to the effective date of the petitioners ’ judgments or the assignment to the intervener. The judgment debtors having defaulted as to the terms of this valid assignment (and having defaulted in the stipulation of settlement, which included therein reference to the original assignment), the judgment debtors have no present interest in the pledged security which petitioners seek to reach in these proceedings. There is no fund, therefore, for petitioners to move against. The judgment debtors having defaulted, they are rightfully out of possession of and, under the facts herein, bereft of any claim to the pledged security. It follows, therefore, that petitioners, who stand in the shoes of the judgment debtors, have no right to the security.
The escrowee, Wydler, Balin, Pares & Soloway, Esqs., are acting pursuant to an agreement which the court finds to be valid and which antedates the judgments of petitioners. The pledged stock is, therefore, beyond the reach of the petitioners and is not subject to the “ turnover proceedings ” herein.
Though something has been claimed to the effect that a judgment creditor may attack a prior encumbrance as void for usury, no case has been cited by petitioners where that has been done and where the judgment creditor has prevailed.
In Union Dime Sav. Inst. v. Wilmot (94 N. Y. 221) a second mortgagee and a mechanic’s lienor each interposed the defense of usury in an action to foreclose the first mortgage. The court held that the defense was insufficient. The second mortgagee, *1030 having taken the mortgage subject to the prior one, was in no condition to allege usury against it. The mechanic’s lienor having furnished material to the owner, who took title subject to both mortgages, was likewise precluded. In this case, Judge Earl remarked: “But a subsequent lien-holder can have no better right to interpose the defense of usury than the owner or borrower had at the time the lien was created. An owner or borrower may be estopped from setting up the usury, or he may in some legal way waive the defense, or, by agreement, purge the transaction of usury; and whoever thereafter purchases from him the real estate upon which the usurious security is a mortgagee, or obtains a lien thereon from or under him, takes his position, and can have no better right to allege the usury than he had.’-’ (Union Dime Sav. Inst. of N. Y. v. Wilmot, 94 N. Y. 221, 228, supra.)
The judgment creditors-petitioners herein acquired their judgments subsequent to and subject to the assignment to Frankel, and the principle of law in the Union Dime Sav. case (supra) is applicable to the factual situation now before the court.
In Halsey v. Winant (258 N. Y. 512, 528, 530) the court discusses with approval the decision in Post v. Bank of Utica (7 Hill 391) in which judgment creditors who had purchased property on an execution sale filed a bill in chancery to set aside a usurious mortgage given by the judgment debtor or have it declared subsequent to the lien of their judgment, but without offering to pay the loan. There a demurrer was sustained and the complaint dismissed. The court said (p. 396): “Had the legislature, which was composed of sound practical men, intended to have included judgment creditors in the provision in question, they would doubtless have said so expressly”. The decision in that case is binding authority upon the issues herein and for the determination that a judgment creditor such as the petitioners may not attack the prior valid assignment on the ground of usury. The Friedgood transaction and the Frankel assignment, first in time, have a priority which the judgment creditors-petitioners cannot avoid.
The petitioners as judgment creditors have no right to any funds which the judgment debtors themselves could not obtain. (Matter of Slaff v. Slaff, 9 A D 2d 80.) Petitioners stand on no -better footing than their judgment debtors, and their rights, as were theirs, are subject to any valid assignment theretofore executed. (Matter of Gombert v. Fuller Contr. Co., 285 App. Div, 1053.)
*1031 The court finds that the transaction between Friedgood and Frankel was in fact a valid sale. Therefore, the question of the privity of petitioners is rendered academic.
The court finds there is no fund for the petitioners to move against in the first two proceedings brought pursuant to CPLR 5225 (subd. [b]) and that the rights of the petitioners are inferior to the right of Frankel.
The proceedings are dismissed.
The cross motion of interveners Kulak and Lerner, which requests the court to determine priorities, is dismissed for the reason that there is presently no fund for this court to act upon.
In the third proceeding, brought by Frankel’s Huntington, Inc. pursuant to CPLR 5240 (which provides, “ The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure”), the court makes the following decision:
(1) With respect to the restraining orders served by American Bank & Trust Company and Leumi Financial Corporation, the court having found that there is no fund for this creditor to execute against, the restraining order is, therefore, canceled.
(2) For the same reasons, there is no fund for Philip Amin, a creditor, to execute against and, moreover, the said Philip Amin has not appeared or entered any defense to this proceeding (although service was made on his attorney on April 4,1969); the third-party execution of judgment served by Philip Amin is, therefore, canceled.
(3) With respect to so much of this proceeding as seeks a judgment authorizing Wydler, Balín, Pares & Soloway, Esqs., to turn over the stock of Smallwood Estates, Inc. to their principal, Frankel’s Huntington, Inc., in order that said judgment creditor, Frankel’s Huntington, Inc., will be in a position to sell said stock pursuant to the terms of the assignment agreement and stipulation of settlement, the said motion is granted and the escrowee, Wydler, Balín, Pares & Soloway, Esqs., are hereby authorized and directed to turn over said stock to their principal, Frankel’s Huntington, Inc.
With respect to the cross motion of American Bank & Trust Company and Leumi Financial Corporation to vacate and set aside an ex parte order and judgment entered thereon, of Justice Paul J. Widlitz, dated March 26, 1969, the court finds that in that order and judgment the court resolved issues between Frankel’s Huntington, Inc. and Smallwood Estates, Inc., Charles E. Friedgood and Jacob Halperin; the petitioners *1032 were not a party to that proceeding and have no standing to request the court to vacate the judgment.
The practice of moving before one Special Term to declare void the order of another Special Term is not sanctioned by practice or any other controlling authority. (Platt v. New York & Sea Beach Ry. Co., 170 N. Y. 451; Matter of White, 101 App. Div. 172.) It is not proper practice to seek a review of the order of one Special Term Justice by another such Justice. Such a practice, if sanctioned, is tantamount to an appeal from an order made by one Special 'Term Justice to another Special Term Justice who has no appellate or revisory jurisdiction with respect to the order. (Empire Mut. Ins. Co. v. West, 22 A D 2d 938.)
The cross motion is, therefore, dismissed.

 A stricter degree or quantum of evidence than a mere preponderance is required in usury cases. (Rinaldo v. Holdeen, 20 A D 2d 745.)